# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HUGO GONZALEZ** | **CIVIL ACTION** |
| **VERSUS** | **No. 18-7711**<br>**c/w 18-7832, 18-7887** |
| **SEA FOX BOAT COMPANY, INC.** | **SECTION I**<br>**REF: ALL CASES** |

### ORDER & REASONS

Before the Court is defendant Sea Fox Boat Company, Inc.'s ("Sea Fox") motion[1] to transfer the above-captioned consolidated matters to the United States District Court for the Western District of Louisiana, Lake Charles Division, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is granted.[2]

### I.

This case arises out of a tragic boating accident that occurred on July 29, 2018.[3] According to the complaints, a vessel designed, manufactured, marketed, and sold by Sea Fox exploded on the Calcasieu River in Lake Charles, Louisiana, causing severe injuries to plaintiffs Hugo Gonzalez, Galloway Outlaw-Knight, and Jeremy Eades, all of whom were aboard the vessel at the time of the explosion.[4] The plaintiffs

---

[1] R. Doc. No. 73.
[2] Plaintiffs Hugo Gonzalez, Galloway Outlaw-Knight, and Lauren Outlaw-Knight filed an opposition to the motion to transfer. R. Doc. No. 88. Plaintiff Cortney Blair Alston has adopted their memorandum. R. Doc. No. 90, at 1.
[3] R. Doc. No. 73, at 1; R. Doc. No. 88, at 1.
[4] *See, e.g.*, R. Doc. No. 1, at 2. Hugo Gonzalez is a plaintiff individually and on behalf of his minor children. *Id*. Galloway Outlaw-Knight and his wife, plaintiff Lauren Outlaw-Knight, are also plaintiffs individually and on behalf of their minor children. R. Doc. No. 1, at 1, 3 (No. 18-7887). On October 28, 2018, Jeremy Eades died, allegedly as a result of his injuries. R. Doc. No. 84, at 2. Cortney Blair Alston was substituted

individually filed lawsuits against Sea Fox, and the matters were eventually consolidated before this Court.[5] Each plaintiff has since filed an amended complaint naming Yamaha Motor Corporation, U.S.A. ("Yamaha") as an additional defendant.[6] The plaintiffs allege that Yamaha designed, manufactured, marketed, and sold a filter that was installed on the subject boat.[7]

Sea Fox filed a counterclaim against the plaintiffs, alleging that the explosion was a result of their own negligence.[8] Additionally, Sea Fox filed a third-party complaint against the alleged owners of the boat, Daniel and Francene Henderson (the "Hendersons"), alleging that the explosion was also a result of the Henderons's negligence in maintaining the boat.[9]

## II.

Sea Fox moves the Court to transfer these consolidated cases to the Western District of Louisiana, Lake Charles Division, pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

as the plaintiff in his case, in her capacity as the administratrix of his estate. R. Doc. No. 58, at 1. In addition to negligence claims, she asserts claims against the defendants for wrongful death and survival. R. Doc. No. 78, at 2–3.
[5] R. Doc. No. 17.
[6] *See* R. Doc. Nos. 71, 72, 84.
[7] *See, e.g.*, R. Doc. No. 71, at 2.
[8] R. Doc. Nos. 33, 34, 35.
[9] R. Doc. No. 33, at 7–8.

2

The moving party has the burden of showing "good cause" for a transfer by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*] (quoting § 1404(a)). If the transferee court is not clearly more convenient, then the court deciding whether to transfer should respect the plaintiff's choice of venue. *Id.*; *see also In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative."). "The district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

To determine whether a transfer is warranted, courts consider several private and public interest factors:

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations omitted). The foregoing list is not exhaustive, and no one factor is dispositive. *Id.*

**III.**

As a threshold matter, the plaintiffs do not dispute that these cases could have been filed in the Western District of Louisiana. The Lake Charles Division is an appropriate venue because the boat accident that forms the basis of the actions occurred within the Western District of Louisiana. *See* 28 U.S.C. § 1391(b)(2).[10]

Thus, the Court must decide whether Sea Fox has established good cause for its requested transfer, and it must determine whether the Western District of Louisiana is clearly a more convenient forum. The Court will weigh the private and public interest factors separately.

**PRIVATE INTEREST FACTORS**

On balance, the Court concludes that the private interest factors weigh in favor of granting Sea Fox's motion.

*Relative ease of access to sources*

"Courts consider the distance between the current location of the evidence and the trial venue in ascertaining the relative ease of access to sources of proof." *SP Plus Corp. v. IPT, LLC*, No. 16-2474, 2016 WL 9280320, at *7 (E.D. La. Dec. 12, 2016) (Feldman, J.). Although "electronic discovery renders discovery of the documents at

---

[10] Sea Fox incorrectly contends that 28 U.S.C. § 1391(a) "requires" that an action be brought in the judicial district in which the events giving rise to the action occurred. R. Doc. No. 73, at 3. Section 1391(a) simply states that "[e]xcept otherwise provided by law, (1) [§ 1391] shall govern the venue of all civil actions brought in district courts in the United States; and (2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature."

4

either venue a less cumbersome task than in yesteryear, this factor still bears on the analysis." *Id.* (citing *Volkswagen II*, 545 F.3d at 315).

Sea Fox argues that this factor weighs in favor of transferring the cases: immediately following the accident, the plaintiffs were treated at a hospital in Lafayette, Louisiana, which is closer to Lake Charles than New Orleans; the accident was investigated by Lake Charles authorities; and it appears that the eyewitnesses to the accident all live in or near Lake Charles.[11] Therefore, accident reports, witness statements, and investigative documents are likely to be in the Western District of Louisiana.

Additionally, because the Hendersons live in Lake Charles, Sea Fox argues that, "[p]resumably, any relevant boat/motor maintenance and service records are also in" the Western District of Louisiana.[12] These records, and any other relevant documents in the Hendersons' possession, are likely to be of great importance to Sea Fox's third-party claims, which allege that the Hendersons were negligent in maintaining the boat.

In response, the plaintiffs argue that this factor weighs against a transfer because the subject boat is now being stored in New Orleans, the inspection took place in New Orleans, and the plaintiffs' current treating physicians are located in the Eastern District of Louisiana.[13] The plaintiffs do not, however, explain the significance of the fact that the boat is being stored in New Orleans; as they admit,

---

[11] R. Doc. No. 73-1, at 4–5.
[12] *Id.* at 5.
[13] R. Doc. No. 88, at 6.

5

the boat has already been inspected. Although some of the plaintiffs' medical records will be located in New Orleans, the bulk of the evidence with respect to the plaintiffs' claims against Sea Fox, as well as Sea Fox's counterclaims and third-party claims against the plaintiffs and the Hendersons, appears most likely to be in or near the Western District of Louisiana.[14] This factor weighs in favor of a transfer.

*Availability of compulsory process to secure witnesses*

Rule 45 of the Federal Rules of Civil Procedure governs a district court's subpoena power. A district court can subpoena a person to attend a trial, hearing, or deposition anywhere within 100 miles of where that person lives or works. Fed. R. Civ. P. 45(c)(1)(A). Thus, "a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition" within the 100-mile rule. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 17-456, 2018 WL 4620636, at *4 (E.D. Tex. May 22, 2018) (citing Fed. R. Civ. P. 45(a)(2), (c)(1)). A district court also has statewide subpoena power over all parties and their officers in states where they live or work. Fed. R. Civ. P. 45(c)(1)(B)(i). Similarly, non-party witnesses can be

---

[14] The plaintiffs also contend that Sea Fox's sole authorized vendor in this state is in the Eastern District of Louisiana. *See id.* at 3. Yet again, the plaintiffs have failed to explain the relevance of this fact: no party has contended that the Hendersons purchased the subject boat from that particular vendor.

As an aside, the Court also notes that, because Sea Fox maintains its principal place of business outside Louisiana, R. Doc. No. 33, at 6, it is also likely that at least some of the records related to the design and manufacturing of the allegedly defective boat are located outside of the state altogether. This bears neutrally on the transfer analysis, however, considering both the current venue and the proposed transferee venue are Louisiana districts.

compelled to attend a trial in the state where they live or work, so long as their attendance would not require them to "incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii).

Sea Fox is incorporated and maintains its principal place of business in South Carolina, at least two of the plaintiffs as well as the third-party defendants live in Louisiana, and one plaintiff lives in Arkansas. Therefore, with respect to the parties that have made an appearance in these cases, both this district and the proposed transferee district have the same subpoena power.[15] *See* Fed. R. Civ. P. 45(c)(1)(B)(i).

All parties agree that neither the Western nor the Eastern District of Louisiana has absolute subpoena power over all non-party witnesses—that is, the power to compel their attendance at both depositions and trial. *Volkswagen II*, 545 F.3d at 316. But "[t]his factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue." *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 777 (E.D. Tex. 2014) (citing *Volkswagen II*, 545 F.3d at 416). Assessing those witnesses identified by Sea Fox, they all appear to live or work in or near the Western District of Louisiana. By contrast, none live or work in or near New Orleans. With respect to their trial testimony, they would only be subject to this Court's subpoena power if they would not incur "substantial expense" as a result. Fed. R. Civ. P. 45(c)(1)(B)(ii). As a result, whereas the Western District of Louisiana could compel their testimony at trial unconditionally, this Court would have to individually

---

[15] To date, there is no proof of service on Yamaha in the record, nor has the company made an appearance in these cases.

assess whether each witness would incur substantial expense by being required to attend. *See Johnson v. Union Pac. Ry. Co.*, No. 15-3558, 2015 WL 7777983, at *4 (E.D. La. Dec. 2, 2015) (Morgan, J.).[16]

The plaintiffs counter by arguing that a transfer would not solve the problem because the Western District of Louisiana would not have certain subpoena powers over a different set of witnesses, such as the plaintiffs' treating physicians and experts and Sea Fox employees. The plaintiffs do not specify which Sea Fox employees might be witnesses in these matters, although the Court notes that its subpoena power over any employees based outside of Louisiana would be the same as that of the Western District of Louisiana.[17] Although neither party has indicated any witnesses that would be unwilling to testify, "those [witnesses] most *likely* to require subpoenas" appear to be in the Western District of Louisiana, so this factor weighs in favor of a transfer. *Panel Specialists, Inc. v. Tenawa Haven Processing, Inc.*, No. 15-6944, 2016 WL 11318054, at *2 (E.D. La. Aug. 22, 2016) (Milazzo, J.) (emphasis added). Overall, the Court considers this factor to be neutral.

*Cost of attendance for willing witnesses*

The Court must also consider the cost of attendance for willing witnesses. Consideration should be given to "the parties and witnesses in all claims and

---

[16] Sea Fox has argued that, in fact, they would incur substantial expense. R. Doc. No. 73-1, at 7.
[17] "No matter the venue, some witnesses would be outside of the chosen court's subpoena authority . . . ." *Panel Specialists, Inc. v. Tenawa Haven Processing, Inc.*, No. 15-6944, 2016 WL 11318054, at *2 (E.D. La. Aug. 22, 2016) (Milazzo, J.).

8

controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. As the Fifth Circuit has explained, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204–05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. The distance between New Orleans and Lake Charles by car is approximately 200 miles, so the inconvenience factor is heightened for each witness who would be required to travel.

Regardless of whether these cases proceed in the Eastern District or the Western District of Louisiana, some witnesses—parties and non-parties—will have to travel. If the Court denies Sea Fox's motion to transfer, and this district remains the venue, numerous parties and witnesses will likely have to travel further than 100 miles for trial: the plaintiffs themselves,[18] the eyewitnesses to the accident, the first responders and the doctors who treated the plaintiffs in the immediate aftermath of the explosion; the state officials who investigated the accident; and the Hendersons, who are now also parties to the case as a result of Sea Fox's third-party claims. If the cases are, instead, transferred to the Western District of Louisiana, plaintiffs'

---

[18] Galloway Outlaw-Knight is a resident of Merryville, Louisiana, which is over 200 miles from New Orleans. R. Doc. No. 73, at 1. Hugo Gonzalez is a resident of Sulphur, Louisiana, which is approximately 200 miles from New Orleans. *Id.* at 2. The deceased, Jeremy Eades, was an Arkansas resident. *Id.* at 2; R. Doc. No. 1, at 1 (No. 18-7832).

9

treating physicians and expert witnesses will have to travel more than 100 miles.[19] The plaintiffs argue that this factor, therefore, weighs against a transfer because it simply shifts the inconvenience from Sea Fox to the plaintiffs.[20] However, based on the information provided in the motion and the opposition, more parties and witnesses will be burdened by travel costs if the cases remain in this district, so this factor weighs in favor of a transfer.

*All other practical problems*

Finally, the last private interest factor requires the Court to consider all other practical problems that make trial "easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. All parties agree that this factor is neutral, as these matters are in the early stages of litigation. No party has suggested that the Court's ruling on this motion would cause undue delay or prejudice, regardless of whether the cases are ultimately transferred.

**PUBLIC INTEREST FACTORS**

Turning to the public interest factors, three of the four do not support any one party's position. However, the fourth factor weighs heavily in favor of a transfer.

---

[19] R. Doc. No. 88, at 7. The plaintiffs argue that a transfer would be prohibitively expensive for the plaintiffs' treating physicians because they would have to leave their practices to travel. *Id.* However, the Court notes that this inconvenience would theoretically apply to any witness who is employed. Both parties also have video depositions at their disposal.
[20] R. Doc. No. 88, at 7.

*Administrative difficulties caused by court congestion;*
*forum familiarity with the governing law; and avoidance*
*of unnecessary foreign or conflict-of-laws problems*

The parties have not informed the Court of any docket congestion in the Western District of Louisiana, but—despite Sea Fox's assertion—there are no difficulties flowing from court congestion in the Eastern District of Louisiana either.[21] Similarly, all parties agree that there are no foreign or conflict-of-laws issues.[22] As to the familiarity of the forum with the governing law, the plaintiffs argue that this factor weighs against a transfer because this Court is well-versed in federal maritime law and the United States Magistrate Judge assigned to these cases is familiar with their facts. However, this litigation is in its infancy; indeed, one of the defendants has not yet made an appearance, and no scheduling order has been issued. Furthermore, this district is no more equipped than the Western District of Louisiana to analyze and apply general maritime law.

*Local interest in having localized interests decided at home*

By contrast, the fourth public interest factor weighs overwhelmingly in favor of the requested transfer. The accident that gave rise to these cases occurred on the Calcasieu River in Lake Charles. The plaintiffs do not contest that two of them live significantly closer to Lake Charles than New Orleans (and none live in or near this district). All of the witnesses to the accident live near or in Lake Charles. The plaintiffs were hospitalized and received emergency medical treatment at a hospital

---

[21] R. Doc. No. 73-1, at 8.
[22] *Id.* at 10; R. Doc. No. 88, at 8.

that is closer to Lake Charles than it is to New Orleans. Additionally, the accident was investigated by officers of the Louisiana Department of Wildlife & Fisheries' Lake Charles Enforcement Division. Undoubtedly, the Western District of Louisiana has a significantly greater interest in, and a stronger connection to, these matters than the Eastern District of Louisiana.

The plaintiffs attempt to establish a connection between this district and the facts of these cases by characterizing Sea Fox as a "corporate citizen" of the Eastern District of Louisiana.[23] Although Sea Fox appears to have authorized at least one vendor to sell its boats here, Sea Fox is a South Carolina corporation with its principal place of business in South Carolina,[24] and the plaintiffs' purported connection is too attenuated. Ultimately, they "have failed to demonstrate . . . how the citizens of the Eastern District of [Louisiana], where there is no factual connection with the events of [these] case[s], have more of a localized interest in adjudicating [these] proceeding[s] than the citizens of the Western District of [Louisiana]." *Volkswagen I*, 371 F.3d at 206.

It appears to the Court that, if anything, this district is more convenient for the plaintiffs' counsel than for the plaintiffs themselves. *See Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 717 (E.D. Tex. 1998) (granting the defendant's motion to transfer venue, noting that "[t]he only factor truly favoring Plaintiffs' choice of forum is the fact that their lawyers reside in Beaumont"); *see also Volkswagen I*, 371 F.3d

---

[23] R. Doc. No. 88, at 8.
[24] R. Doc. No. 33, at 6.

12

at 206 ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."); *In re Horseshoe Entm't*, 337 F.3d at 434 ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."). The plaintiffs' opposition makes much of the fact that their current treating physicians are in the New Orleans area, but the Court is not persuaded by the plaintiffs' counsel's attempt to justify a more convenient forum in the Eastern District of Louisiana by having two of the plaintiffs, who do not live in New Orleans, treated here. The Court finds that these cases are most appropriately litigated in the Western District of Louisiana.

IV.

Having considered and weighed the pertinent factors, the Court concludes that Sea Fox has established good cause for transferring these cases to the Western District of Louisiana, Lake Charles Division, which is clearly the more convenient forum.

Accordingly,

**IT IS ORDERED** that the motion to transfer venue is **GRANTED** and that the above-captioned consolidated cases are **TRANSFERRED** to the United States District Court for the Western District of Louisiana, Lake Charles Division.

New Orleans, Louisiana, February 1, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**